Harman Becker Automotive Sys., Inc. v Avnet, Inc. (2025 NY Slip Op 02157)

Harman Becker Automotive Sys., Inc. v Avnet, Inc.

2025 NY Slip Op 02157

Decided on April 15, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 15, 2025

Before: Webber, J.P., Friedman, Kapnick, Rodriguez, Rosado, JJ. 

Index No. 652961/23|Appeal No. 4099|Case No. 2024-02358|

[*1]Harman Becker Automotive Systems, Inc., etc., et al., Appellants,
v
Avnet, Inc., etc., et al., Respondents, Broadcom, Inc. etc., Defendant. 

McCarter & English, LLP, New York (Daniel P. D'Alessandro of counsel), and Warner Norcross + Judd LLP, Grand Rapids, MI (Charles R. Quigg of the bar of the State of Michigan, admitted pro hac vice, of counsel), for appellants.
Linklaters LLP, New York (Bonita Robinson of counsel), for Avnet, Inc., and Avnet Europe Comm VA, respondents.

Order, Supreme Court, New York County (Jennifer G. Schecter, J.), entered March 6, 2024, which, to the extent appealed from as limited by the briefs, granted the motion of defendants Avnet, Inc. and Avnet Europe Comm VA (collectively Avnet) to dismiss plaintiffs' breach of contract claim as against Avnet, unanimously affirmed, with costs.
This matter arises out of a purported exclusive semiconductor chips supply arrangement during the global chip supply shortage. Plaintiffs (Harman) are three entities that entered into a Memorandum of Understanding (MOU) with Avnet regarding chip order and shipment. According to the MOU, Harman would provide Avnet with either purchase orders or a rolling forecast when it needed to order chips, and Avnet as the distributor would use these orders to place purchase orders to defendant Broadcom, Inc. and allocate shipment. Under the MOU, Harman is "obliged to purchase the maximum amount of Products ordered by the Vendor from the Supplier," but the MOU contains no language that imposes obligations upon Avnet with respect to the time of chip delivery. After Broadcom proposed a chip allocation arrangement in exchange for further chip delivery in 2023, Harman alleges that Avnet breached the Supply Agreements, which consisted of the MOU, the purchase orders, the Terms and Conditions (T&Cs), and other related documents.
Harman's contention that the MOU constitutes a requirements contract is unavailing. A requirements contract requires the buyer "to buy all of its particular needs in certain products from one supplier" (Progressive Milk Co. v Luna, 126 AD2d 247, 248-249 [1st Dept 1987]). Here, neither the language of the MOU nor the purchase orders conclusively establish that Harman had the obligation to purchase the chips at issue exclusively from Avnet, and Harman concedes on appeal that it purchased from other sources in emergency situations and to mitigate potential damages. This omission in an agreement between sophisticated entities "must be assumed to have been intentional" (Indeck Energy Servs., Inc. v Merced Capital, L.P., 200 AD3d 455, 456 [1st Dept 2021] [internal quotation marks omitted]).
The MOU requires Harman to "provide [Avnet] with either Purchase Orders or a rolling Forecast of its requirements for the List of Products," but the MOU contains no language that imposes an obligation on Avnet to supply the full quantity of chips ordered by Harman. Rather, the MOU merely requires Avnet to "utili[z]e [Harman's Purchase Orders] for Purchase Order placement towards the Supplier and for shipment allocation and delivery call offs." The language of the MOU does not create an implied obligation for Avnet to timely supply the full quantity of chips from Harman's purchase orders (see id.).
Harman also contends that the T&Cs were incorporated into the purchase orders. However, in each purchase order issued by Harman, a sentence in small print reads: "Shipment against this Purchase Order is subject to Harman's Terms [*2]and Conditions, unless a specific signed agreement with Harman is in place." That sentence makes the T&Cs inapplicable to this case, since Harman issued the purchase orders to Avnet pursuant to a signed agreement with Harman, namely the MOU (see Ruane v Allen-Stevenson School, 82 AD3d 615, 616 [1st Dept 2011]).
Harman also contends that UCC 2-202(a) and 2-208 incorporate the parties' course of dealing into the agreement, thereby creating an obligation for Avnet to timely furnish all the deliveries without restrictions. However, UCC 2-202 provides that the terms of a written agreement may not be contradicted "but may be explained or supplemented" by course of performance and course of dealing. UCC 2-208(2) provides that when construction of the express terms of the agreement and course of performance is unreasonable, "express terms shall control course of performance and course of performance shall control both course of dealing and usage of trade." Here, the language of the MOU is unambiguous, and Harman fails to identify the record that could "establish some positive obligation on the part of [Avnet]" to continue to timely supply all the chips at issue (Shionogi Inc. v Andrx Labs, LLC, 187 AD3d 422, 424-425 [1st Dept 2020]).
Furthermore, even if the MOU constitutes a requirements contract, Harman's breach of contract claim was correctly dismissed because Harman failed to identify any contractual terms that Avnet breached by failing to deliver the quantities of chips ordered within a certain time (see Hempel v Wise, 224 AD3d 574, 575 [1st Dept 2024]; Atlas MF Mezzanine Borrower, LLC v Macquarie Tex. Loan Holder LLC, 174 AD3d 150, 166 [1st Dept 2019]).THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 15, 2025